Fred J. LA FORTUNE, Trustee for Suzanne M. LaFortune, Renee Elizabeth LaFortune, and Colette M. LaFortune, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Jeanne LaFortune HENRY, Trustee for Patrick Joseph Henry, and Carol Jean Henry, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

J. A. LA FORTUNE, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent (two cases).

Lucius LA FORTUNE, Trustee for Daniel LaFortune, and Kathryn LaFortune, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Mary Ann LaFortune WILCOX, Trustee for Homer Frank Wilcox, Jr., and Mary Teresa Wilcox, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Gertrude L. LA FORTUNE, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent (two cases).

Joseph A. LA FORTUNE, Jr., Donee and Transferee of J. A. LaFortune, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Joseph A. LA FORTUNE, Jr., Donee and Transferee of Gertrude L. LaFortune, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Robert James LA FORTUNE, Donee and Transferee of J. A. LaFortune, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Robert James LA FORTUNE, Donee and Transferee of Gertrude L. LaFortune, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 5927–5938.

United States Court of Appeals
Tenth Circuit.

Dec. 15, 1958.

188

Corinne Childs, Tulsa, Okl., for petitioners.

James P. Turner, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., were with him on the brief), for respondent.

Before BRATTON, Chief Judge, and PICKETT and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

These twelve consolidated appeals involve deficiencies in gift taxes for the

calendar years 1951 to 1954, inclusive, on gifts made by J. A. LaFortune and Gertrude L. LaFortune, his wife, in trust for minors. The Tax Court, with one judge concurring specially and three judges dissenting in part, upheld the Commissioner.[1]

During the years in question Mr. and Mrs. LaFortune made total gifts of $495,026.11, which included gifts of $215,881.25 in trust for minors. The Commissioner determined that as to the latter the annual $3,000 exclusion provided by § 1003(b) (3) of the 1939 Internal Revenue Code, as amended, 26 U.S.C.A. § 1003(b) (3), was not allowable with respect to the 1951–2 gifts of corpus and gifts of the present right to receive income and was not allowable with respect to the 1953–4 gifts of corpus. The total deficiency of $34,986.91 was assessed against the donors in the amount of $25,636.79 and against transferees in the amount of $9,350.12. The transferee liability is only for the tax arising from the 1951 gifts.

Of the 29 gifts to trustees for the benefit of minors, 13 were made during 1951 and 1952 and 16 during 1953 and 1954. Each trust was for the benefit of named minors. In each the designated trustee was a parent of the beneficiary and with one exception [2] the first successor trustee was the other parent. The second successor trustee was a bank.

Each trust agreement provides that the trustee is to pay the income annually to the beneficiary or to his or her guardian if such guardian "has been appointed by the proper court." The termination provisions of the trusts involved in the years 1951–2 differ in one important particular from those provisions of the trusts involved in the years 1953–4. In each instance there are termination and distribution of corpus upon the attainment by the beneficiary of the age of majority or upon the death of the beneficiary. In the event of death distribution is to the heirs of the beneficiary in accordance with the Oklahoma laws of descent and distribution. The difference arises in that the following provision is contained in the 1951–2 trust agreements but not in the 1953–4 trusts:

> "Trustee shall have the right and authority, in [his or] her sole discretion, to terminate this trust at any time [he or] she deems it for the best interests of the beneficiary to do so * * *."

In event of such termination distribution is to be made to the beneficiary or guardian. No termination of any trust occurred during the period involved.

■ The $3,000 annual exclusion provided by § 1003(b) (3) does not apply in the case of gifts of future interests in property. The disabilities of minority are such that, in many instances, a gift to a minor takes the form of a trust for the benefit of the minor with either payment or accumulation of income and with corpus distribution deferred to attainment of majority or some greater age. Future interests are interests "limited to commence in use, possession, or enjoyment at some future date or time." [3] Recognizing the problem of whether a gift in trust for a minor can be a present interest and the resulting hindrance to such gifts, Congress, by § 2503(c) of the 1954 Internal Revenue Code, 26 U.S.C.A. § 2503(c), provided that gifts to minors will not be considered gifts of future interests if the income and property can be spent by or for the child before he attains age 21 and if not so spent pass to the child when he reaches that age or to

---

1. The Tax Court opinion is reported at 29 T.C. 479. Two judges dissented on the disallowance of the exclusion as to the 1951–2 gifts of income. One dissenting judge would allow the exclusion as to the 1951–2 gifts of corpus.

2. The exception was the trust in which Lucius LaFortune was named trustee for Daniel LaFortune, docket No. 5930.

3. Treasury Regulations 108, § 86.11 derived from H.Rep. No. 708, 72d Cong., 1st Sess., p. 29. See Commissioner of Internal Revenue v. Disston, 325 U.S. 442, 446, 65 S.Ct. 1328, 89 L.Ed. 1720, and authorities there cited.

his estate if he dies prior thereto.[4] Such amendment is of no avail in these cases which must be decided under the previous law.

■ Separate and independent consideration must be given to the gift of the corpus and to the gift of the income. If the income of a trust is required to be distributed periodically, as annually, but distribution of the corpus is deferred, the gift of the income is one of a present interest and the gift of the corpus is one of a future interest.[5] In the instant cases there is an unconditional direction to each trustee to pay the income "at least annually" to the beneficiary or his guardian, and an alleged deferment of distribution of the corpus.

■ The decisive test as to whether a gift is so limited to commence in enjoyment at a future date as to constitute a gift of a future interest is "the barrier of a substantial period between the will of the beneficiary or donee now to enjoy what has been given him and that enjoyment." [6]

■ In the 13 trusts involved in the 1951–2 gifts distribution of corpus can occur when a beneficiary reaches majority, when a beneficiary dies before attaining majority, or when the trustee in his sole discretion terminates the trust for the best interests of the beneficiary. A gift of an interest which is contingent upon survivorship is a gift of a future interest.[7] This rule controls unless the power of the trustee to terminate before majority alters the situation. Speaking generally, when enjoyment is contingent on the exercise of a trustee's discretion, the gift is of a future interest.[8]

With regard to the 1951–2 gifts the appellants contend that there is no barrier to the right of present enjoyment because the trustee, in each case a parent, has the uncontrolled power to terminate at his sole discretion. Relying on the rule that the nature of the interest of the donee is determined as of the date of the gift and not by what a trustee may subsequently do in the exercise of a discretionary power,[9] they insist that the parent-trustee could have immediately exercised his discretion to terminate and hence the minor beneficiary had the right to immediate enjoyment and a present interest was given by the donor.

■■ Gifts in trust take such different and varied forms that it is difficult to lay down a categorical rule as to whether a gift is of a future or present interest. Each case must be decided on its particular facts.[10] As a general proposition, the minimum qualification for a present interest is the right in some one, a parent, guardian or the beneficiary himself, to make an effective demand for the present enjoyment of the property.[11]

4. H.Rep. 1337, 83d Cong. 2d Sess.; 3 U.S. Code Cong. and Adm.News 1954, pages 4120 and 4760.

5. Fondren v. Commissioner, 324 U.S. 18, 21, 65 S.Ct. 499, 89 L.Ed. 668; Commissioner of Internal Revenue v. Disston, supra; Estate of Herrmann v. Commissioner, 5 Cir., 235 F.2d 440, 444; Sensenbrenner v. Commissioner, 7 Cir., 134 F.2d 883, 885; Fisher v. Commissioner, 9 Cir., 132 F.2d 383, 385.

6. Fondren v. Commissioner, supra, 324 U.S. at page 20, 65 S.Ct. at page 501.

7. United States v. Pelzer, 312 U.S. 399, 404, 61 S.Ct. 659, 85 L.Ed. 913. Cf. Commissioner of Internal Revenue v. Sharp, 9 Cir., 153 F.2d 163.

8. Commissioner of Internal Revenue v. Disston, supra, 325 U.S. at pages 448, 449, 65 S.Ct. at page 1331; Fondren v. Commissioner, supra, 324 U.S. at pages 28–29, 65 S.Ct. at pages 504–505.

9. Commissioner of Internal Revenue v. Brandegee, 1 Cir., 123 F.2d 58, 61.

10. Commissioner of Internal Revenue v. Kempner, 5 Cir., 126 F.2d 853, 854.

11. In Gilmore v. Commissioner, 6 Cir., 213 F.2d 520, it was held that a gift in trust for the benefit of a minor was a gift of a present interest because on demand of the beneficiary the trustee was required to pay to him principal and income. A similar result was reached in Kieckhefer v. Commissioner, 7 Cir., 189 F.2d 118, Strekalovsky v. Delaney, D.C., 78 F.Supp. 556, and Welles v. Sauber, D.C., 142 F.Supp. 449, where each trust gave the legally appointed guardian of the minor the power to make such a demand.

The 1951–2 gifts of corpus were each to a single parent-trustee who may terminate the trust in his sole discretion at any time when he deems it for the best interest of the beneficiary. No one was given the right to demand such termination. There is nothing in the stipulation of facts upon which the cases were tried which bears on the needs of the minor beneficiaries or the financial abilities of the parents. There is no claim that any parent-trustee was the legally appointed guardian of his beneficiary.

██ In substance the argument of the appellants is that the parent-trustee was given the broad general powers of a guardian and hence, at the moment of execution of each agreement, the beneficiary had all the advantages and incidents of ownership of corpus that it is possible for a minor to have. Further, they say that in such circumstances there is no necessity for the trustee to make a demand on himself. The acceptance of such an argument would require that we disregard the legal distinctions which differentiate the identities of parent, guardian, and trustee. While there is a fiduciary relationship between a guardian and his ward, a guardianship is not a trust.[12] There are numerous differences. While a trustee has title to trust property, a guardian has ordinarily only powers and duties respecting property to which the ward holds title. A ward has normally a legal interest while the beneficiary of a trust has an equitable interest in the corpus of the trust.

█ In Oklahoma[13] a parent as such has no control over the property of a child.[14] Also, in Oklahoma, no person whether a parent or otherwise has any power as a guardian of property except by appointment which in pertinent situations has to be by a county court.[15]

█ Under each of the 13 trusts the right of the minor child to immediate enjoyment was dependent upon the exercise of the trustee's discretionary power to terminate when he deemed it "for the best interest of the beneficiary." This limitation upon the discretionary power may not be disregarded. In the absence of a showing that the best interests of the beneficiaries so affirmatively required termination that the failure to exercise

The trust agreement considered in United States v. Baker, 4 Cir., 236 F.2d 317, 319, empowered the trustee to use income and principal for the benefit of the minor as if he "were holding the properties as Guardian of the beneficiary."

The Tax Court has held that the gift is of a future interest unless there is some one, such as a guardian or parent, who at the time the trust was created could make an effective demand on behalf of the minor for immediate possession and enjoyment of the property. In George W. Perkins, 27 T.C. 601, the trust provided that the beneficiary, his parent or his duly appointed guardian had the right to demand and receive as property of the beneficiary all or part of the principal and accumulated income, and the gift was held to be of a present interest. A contrary result was reached in Abraham M. Katz, 27 T.C. 783, where there were two trustees, the donor's accountant and the beneficiary's mother, and no one was given the unqualified right to demand distribution. In William Goehner, 28 T.C. 542, the trustees, who were the parents of the beneficiaries, were empowered to use the income and so much of the principal as they deemed necessary "for the education, support, maintenance, health and welfare" of the beneficiaries. The Tax Court held that the gift was of a future interest and pointed out that there was no person with the unqualified right to demand the property and that, as the parents were financially able to maintain, educate and support the beneficiaries, there was no showing of the necessity required by the trust agreement for distribution.

12. Restatement of the Law, Trusts, Vol. 1, § 7, p. 27.

13. The donors were Oklahoma residents and each trust provided it "shall be governed and construed under the laws of the State of Oklahoma."

14. 10 O.S.1941 § 8; In re Guardianship of Hight, 194 Okl. 214, 148 P.2d 475, 479.

15. 30 O.S.1941, §§ 7 and 8; Seal v. Banes, 168 Okl. 550, 35 P.2d 704, 712. This is an acceptance of the general rule. See 25 Am.Jur., Guardian and Ward, § 10, p. 13.

the discretionary power amounted to an abuse of discretion, there was no way to compel the trustee to terminate.[16] There is nothing in any of the appeals here presented to bring any of the trusts within any exceptions to the general rule that the nature and extent of the duties and powers of the trustee are determined by the terms of the trust.[17] Those powers are not enlarged by the fact that the trustee is also the parent and natural guardian of the minor beneficiary. No trustee in his capacity as parent or natural guardian had a right to demand termination of the trust or distribution of corpus. In his capacity as trustee he was bound by the trust provisions. Enjoyment of the gift of corpus was plainly dependent upon trustee discretion. This was a substantial barrier to immediate enjoyment and places the corpus of the gift in the category of a future interest. In comparable situations involving parent-trustees the holdings have been that the gift was of a future interest.[18]

The trust agreements involved in the 1953–4 gifts did not authorize termination upon the exercise of trustee discretion and provided for termination only on attainment of majority or death prior thereto. As to these, the appellants again emphasize the broad powers given the trustee and the natural relationship between the parent-trustees and the minor beneficiaries but this argument is even less persuasive here than it was in connection with the 1951–2 gifts. Appellants point out the trust provisions which empower a trustee to determine what is income and what is principal but they make no effort to explain, and we fail to understand, how this could convert a future interest into a present interest. Also, they direct attention to the trust requirement that upon failure of the trust, the trustee shall distribute principal and accumulated income to the beneficiary. This is unimportant because neither the beneficiary nor anyone acting for him can cause such failure. Clearly the 1953–4 gifts of corpus are within the previously noted rule that there is a gift of a future interest when enjoyment of that interest is contingent upon survivorship.[19] We agree with the Tax Court that all the gifts of corpus involved future interests and hence the $3,000 exclusion does not apply.

Under each trust the beneficiary had the immediate right to the enjoyment of income. The Commissioner concedes that the 1953–4 gifts were of present interests so far as the right to income was concerned and allowed the application of the exclusion thereto. As to the right to income under the 1951–2 gifts the Tax Court held that the exclusion could not be allowed because the provision for discretionary termination by the trustee made the interest incapable of valuation. In so holding, strong reliance was placed on the decision in Estate of Herrmann v. Commissioner, supra. Two judges dissented saying that the interest was capable of valuation and that the decision in Estate of Herrmann was wrong.

The value of a present right to income given in trust is calculated by multiplying the expected annual return by the probable period over which it will be paid.[20] In the case of the 1951–2 gifts the probable period over which the income will be paid is uncertain because the trustee has the discretionary right of termination. An integral element of the formula is unknown.

While there are several decisions involving the valuation of gifts to minors, none has considered a situation

16. Cf. Welch v. Paine, 1 Cir., 130 F.2d 990, 992; Restatement of the Law, Trusts, Vol. 1, § 187, p. 479.

17. Restatement, supra, § 164, p. 403.

18. Rassas v. Commissioner, 7 Cir., 196 F.2d 611; Welch v. Paine, supra, and the Tax Court decisions in Abraham M. Katz and William Goehner, both supra.

Cf. Stifel v. Commissioner, 2 Cir., 197 F.2d 107, and the Tax Court decision in George W. Perkins, supra.

19. See Note 7.

20. Treasury Regulations 108, § 86.19(f). Exhibits showing the method of computation are in the record.

identical with that here presented.[21]  Appellants rely on the theory of the Tax Court dissents.  It is argued that the accelerated termination of the trust can only have the effect of investing the beneficiary with the title to the corpus and cannot change the size or value of the present right to income.  As heretofore noted separate consideration must be given to the gift of the corpus and to the gift of the income.  A separate valuation of each is necessary.  The theory that the valuation of the right to income is not affected by the circumstance of an accelerated distribution of principal overlooks the difference between income received by an owner as the result of absolute ownership of property and income received by a trust beneficiary as the result of payments to his trustee from the proceeds of trust investments.  The two are different in legal contemplation.[22]  The possibility of a future merger of the corpus and the right to income does not justify the conclusion that the value of the right to income is the same whether derived from the trust or from ownership because it ignores the distinction between income from ownership and income from a trustee to his beneficiary.[23]  It may be that from a practical standpoint the value would be the same but that possibility is not controlling  The importance of this distinction in cases involving gifts in trust to minors has been removed by § 2503(c) of the 1954 Internal Revenue Code but we are bound by the Fondren and Disston decisions which require separate treatment, including valuation, of the gift of corpus and the gift of income.

The other theory is that the real gift is the gift of corpus and hence the right to income flows not from the trust but from the ownership of the corpus.  This flatly ignores the rule that the gift of corpus and the gift of income have to be considered separately.  If the theory were accepted, then the issue would rest squarely on whether the gift of corpus was that of a present interest.  As has been said, our conclusion is that it was a gift of a future interest.

■ ■ ■  In Commissioner of Internal Revenue v. Disston, supra, it was stated that the taxpayer claiming the exclusion must assume the burden of showing the value of what he claims is other than a

---

21. The case most closely in point is that of Estate of Herrmann v. Commissioner, supra, which involved a trust wherein the annual right to income was uncertain because of the unlimited power of the trustee to distribute corpus when he deemed it necessary or advisable and it was held that the right to income could not be valued because of the potential reduction of income producing corpus. The trusts now under consideration gave discretionary power to terminate but no power to make partial distribution of corpus.  In Evans v. Commissioner, 3 Cir., 198 F.2d 435, distribution of principal was allowed when necessary for the education, comfort and support of the beneficiary and the court held that it was impossible to ascertain the value of the present interest.  Kniep v. Commissioner, 8 Cir., 172 F.2d 755, concerned a trust where the corpus could be distributed each year in the sum of not exceeding $1,000 and held that a value could be ascertained by calculation on the basis of the maximum allowed distribution of principal in each year.  In Helvering v. Blair, 2 Cir., 121 F.2d 945,

the trustees had a continuing power to change the allocation of income between several beneficiaries and it was held that the value could not be calculated.

22. Evans v. Commissioner, supra.

23. These distinctions can have a real effect on the income derived from property.  The powers given the trustees under the instruments here involved are broad but they are not as broad as the powers of an owner.  In the event of distribution of corpus during minority there would be the necessity of legal guardianship with the attendant limitations on power to make and hold investments.  See O.S.1941, Title 30, §§ 10 and 16, and Title 58, §§ 811 and 882.  The gifts here were of corporate stock which a court controlled guardian might be required to sell.  Guardianship fees and trustee fees, in the event of succession of a corporate trustee, might have a minor effect on income.  The assumption that a change of status from trustee to guardian would have no effect on income is one which we cannot make.

future interest.[24] That burden has not been sustained in these cases. We conclude that the Tax Court correctly held that the rights to income under the 1951–2 gifts were incapable of valuation and hence were not subject to the claimed exclusion.

The remaining question is that of transferee liability for the tax on the 1951 gifts. It is agreed that the donors are solvent and that the statute of limitations barred collection from them.[25] In four cases the assessment was made against donees of gifts out of which none of the claimed deficiencies arose.

 The liability of a donee as transferee for unpaid gift tax of his donor is clearly established by statute but such liability is limited to the value of the gift received by him.[26] Such liability has been repeatedly upheld by the courts.[27] Solvency or insolvency of the donor is immaterial and assertion of a deficiency against the donor is not required.[28] The statute clearly imposes the liability on any donee of a gift made during the year and hence the fact that the deficiency exists because of a gift to another makes no difference. Appellants argue that the notices of transferee liability did not prorate the liability. That is of no concern as the statute makes each donee liable, to the extent of his gift, for unpaid tax on all gifts made by the donor during the same calendar year.

In Nos. 5927 to 5938, inclusive, the decisions of the Tax Court are severally affirmed.

24. 325 U.S. 449, 65 S.Ct. 1328, 89 L.Ed. 1720.

25. § 1016, 1939 Internal Revenue Code, 26 U.S.C.A. § 1016, requires assessment of the tax within three years after filing of return and § 1025(b) (1) permits assessment against a transferee within one year after the expiration of the period of limitation for assessment against the donor.

26. §§ 1009 and 1025, 1939 Internal Revenue Code, 26 U.S.C.A. §§ 1009, 1025.

27. Mississippi Valley Trust Co. v. Commissioner, 8 Cir., 147 F.2d 186; Moore v. Commissioner, 2 Cir., 146 F.2d 824; Baur v. Commissioner, 3 Cir., 145 F.2d 338, 156 A.L.R. 560; and Fletcher Trust Co. v. Commissioner, 7 Cir., 141 F.2d 36, certiorari denied 323 U.S. 711, 65 S. Ct. 36, 89 L.Ed. 572.

28. Mississippi Valley Trust Co. v. Commissioner, supra. Income tax cases placing the burden on the Commissioner to prove insolvency before imposing transferee liability are not applicable here.